BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE HECTOR DE LA TORRE, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following questions:
1. When the responsibility for operating a special education program is transferred from a county superintendent of schools to a school district, may the county superintendent of schools retain the property tax revenues previously allocated to fund the program?
2. If the county superintendent of schools may retain the property tax revenues previously allocated for operating a special education program that is being transferred to a school district, what sources of funding are available to the school district to cover its costs of providing the special education program?
 CONCLUSIONS
1. When the responsibility for operating a special education program is transferred from a county superintendent of schools to a school district, the county superintendent of schools may retain the property tax revenues previously allocated to fund the program if the tax revenues will be used for other special education programs in a manner that ensures that all individuals with exceptional needs residing in the county will have access to appropriate special education programs and related services.
2. If a county superintendent of schools retains the property tax revenues previously allocated for operating a special education program that is being transferred to a school district, state and federal funds for special education programs are available to the school district to cover its costs of providing the special education program.
 ANALYSIS
The two questions presented for resolution concern California law (Ed. Code, §§ 56000-56885)[1] that governs the administration of special education programs for children with disabilities consistent with and implementing the federal Disabilities Education Act (20 U.S.C. §§ 1400-1419). Under the federal legislation, states and local agencies are provided resources "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living. . . ." (20 U.S.C. § 1400 (d)(1)(A); see 85 Ops.Cal.Atty.Gen. 157 (2002); 83 Ops.Cal.Atty.Gen. 132 (2000).)
We are asked what the consequences are when the responsibility for operating a special education program is transferred from a county superintendent of schools to a school district. May the county superintendent of schools retain property tax revenues previously allocated to help fund the program, and if so, what other sources of revenue are available to the school district to fund the program?
Before addressing the specific questions, we note the general requirements for administering special education programs in California. To promote efficiency, California law requires special education funding to be distributed on a regional basis, with school districts and county offices of education pooling resources in order to address the circumstances of individuals with exceptional needs in the region. (See §§ 56000, 56001.)
School districts and county offices of education are required to organize into geographical regions of sufficient size and scope to provide for all the special education and related service needs of children residing within the region. (See § 56195.1.) These regions, called SELPAs (for Special Education Local Plan Area), constitute the basic organizational unit for special education administration and funding. (See § 56195.) Depending on local conditions and population densities, a SELPA may consist of a single school district, multiple school districts, or a geographic area in conjunction with a county office of education. (§§ 56195.1, 56205.) To ensure that all regions are adequately covered, each county office of education is required to prepare and submit to the State Superintendent of Public Instruction a countywide plan for special education demonstrating the coordination and adequacy of all of the local plans within the county. (§ 56140.)
Each SELPA must prepare a detailed local plan assuring conformance with all federal and state requirements for special education, describing the governance structure for the plan, and specifying how responsibilities and funding will be divided among the participating agencies and their administrative unit, and providing for public participation as well as governmental oversight. (§ 56205, subd. (a); see also § 56195.7 [entities participating in a SELPA are required to develop written agreements for coordination of operations].) The plan must designate either the county office of education or another entity to perform such functions as the receipt and distribution of funds, provision of administrative support, and coordination of services. (§ 56195.1.) A local plan may not be implemented until the county office of education approves it. (§ 56140.)[2]
From year to year, each SELPA is required to adopt, after a public hearing, an updated annual service plan describing how services will be provided within the plan area. To demonstrate that all individuals with exceptional needs, from birth to age 22, will have access to free and appropriate educational and related services, an annual service plan is required to describe the nature of all services to be provided within the plan area, and the physical location at which each service will be provided. (§ 56205, subd. (b)(2).) The range of services that must be made available includes, but is not limited to, regular classroom instruction, special classes, resource specialists, and designated instruction and services related to providing an appropriate education. (§§ 56360, 566363.) Physical locations may include not only the public schools but also preschools, daycare settings, charter schools, private schools, juvenile court schools, and a variety of non-classroom settings such as private homes, public institutions, hospitals, and workplaces. (§§ 56205, subd. (b)(2), 56361.) Among other things, an annual service plan must contain a description of a dispute resolution process, "including mediation and final and binding arbitration to resolve disputes over the distribution of funding, the responsibility for service provision, and the other governance activities specified within the plan." (§ 56205, subd. (b)(5).)
In addition to an annual service plan, a SELPA is required to adopt, after a public hearing, an annual budget plan identifying expected expenditures for all items required under the local service plan. (§ 56205, subd. (b)(1).) The budget must identify, among other things, how the SELPA will distribute state special education funds and property taxes allocated to the SELPA. (§ 56205, subd. (b)(1); see also § 56836.05 [each SELPA must adopt a plan specifying how funds received are to be allocated among agencies in the plan area].)
1. Retention of Property Tax Revenues
The first question presented concerns the allocation of property tax revenues used to fund a special education program when the responsibility for operating the program is being transferred from the county superintendent of schools to a school district. May the county superintendent of schools retain the property tax revenues, or must the revenues be reallocated to the school district? We conclude that the property tax revenues may be retained by the county superintendent of schools if the tax revenues will be used for other special education programs in a manner that ensures that all individuals with exceptional needs residing in the county will have access to appropriate special education programs and related services.
The State Superintendent of Public Instruction allocates property tax revenues for special education programs to each county superintendent of schools (§ 2571), who is responsible for allocating the special education property tax revenues (§ 2570) for special education programs (§ 2572). No statute requires specific property tax revenues to fund particular special education programs, and the revenues are not tied to the special education program needs of particular pupils. Rather, section 2572 specifies only that special education property tax revenues must be allocated by a county superintendent of schools for "special education programs."
Accordingly, a county superintendent of schools may not retain special education property taxes for purposes other than special education programs. And, just as importantly, a county superintendent of schools remains generally responsible to submit to the State Superintendent of Public Instruction a countywide plan for special education "which ensures that all individuals with exceptional needs residing in the county . . . will have access to appropriate special education programs and related services." (§ 56140.) As long as these two conditions are met, the property tax revenues may be retained by the county superintendent of schools in the circumstances presented.
We conclude in answer to the first question that when the responsibility for operating a special education program is transferred from a county superintendent of schools to a school district, the county superintendent of schools may retain the property tax revenues previously allocated to fund the program if the tax revenues will be used for other special education programs in a manner that ensures that all individuals with exceptional needs residing in the county will have access to appropriate special education programs and related services.
2. Other Sources of Funding
The second question presented concerns the possible sources of funding for a special education program previously operated by a county superintendent of schools but now being transferred to a school district. We conclude that if the county superintendent of schools retains the property tax revenues previously allocated for the program, the school district may look to state and federal funds to operate its program.
Under state law, each SELPA is entitled to an amount of money based upon the average daily attendance of the total student population within the plan area. (§ 56836.08.) Property taxes that are allocated for special education programs offset, dollar-for-dollar, state aid within the total entitlement amount for each SELPA each year. (§ 2572.)[3] Hence, any special education property taxes that are lost to a SELPA will be replaced by state aid, up to the total entitlement amount. Where the school district taking over the responsibilities for operating a special education program from the county superintendent of schools is a single-district SELPA or part of a multi-district SELPA not joined with the county office of education, the property tax revenues retained by the county superintendent of schools will thus be replaced by the state. On the other hand, where the school district remains part of a SELPA joined with the county of education, the allocation of funds among the agencies participating in the SELPA will be determined by the SELPA's governance structure.[4] In addition to state funds, federal funds remain available to the school district for its special education program. (§ 56836.01.)
We conclude in answer to the second question that if a county superintendent of schools retains property tax revenues previously allocated for operating a special education program that is being transferred to a school district, state and federal funds for special education programs are available to the school district to cover its costs of providing the special education program.
[1] All further references to the Education Code are by section number only.
[2] If the county office of education disapproves a local plan, the State Superintendent of Public Instruction may overrule the decision. (§ 56140.)
[3] Federal aid similarly offsets state aid within the total entitlement amount. (§ 56836.08.)
[4] As previously noted, disputes within a SELPA over funding may be resolved through a dispute resolution process, including mediation and binding arbitration. (§ 56205, subd. (b)(5).)